

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-27-2004

# USA v. Medrala

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3926

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Medrala" (2004). *2004 Decisions.* Paper 973.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/973

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3926
_____

UNITED STATES OF AMERICA

v.

ROBERT A. MEDRALA,
*Appellant*

_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 01-cr-00657)
District Judge: Honorable Berle M. Schiller
_____

Submitted February 26, 2004
Before: RENDELL, BARRY, and BECKER, *Circuit Judges*.

(Filed February 27, 2004)

_____

OPINION
_____

BECKER, *Circuit Judge*.

Robert A. Medrala appeals from the judgment of conviction, following a jury trial,

on eleven counts of mail and wire fraud. Medrala was charged with masterminding a

fraudulent scheme whereby the company of which he was a principal, Esprit Systems

Consulting, Inc., which sold computer software, development training and consulting to

large corporations and government agencies, overcharged its customers for travel costs. Although Esprit's agreements with the customers were that it would charge them only for travel costs actually incurred, it obtained discount airline tickets (back to back tickets) and charged its customers the higher priced standard coach "Y fare," deceiving the customers as to the prices.

Medrala raises four contentions on appeal: (1) that there was insufficient evidence to support the jury's verdict of guilty on the charges; (2) that the District Court committed clear error when it found that the loss for sentencing guideline purposes was the amount of money Medrala fraudulently obtained from his victims; (3) that the District Court erred when it found that Medrala was an organizer or leader of an "extensive" fraudulent scheme, thus increasing his offense level by four levels, pursuant to U.S.S.G. § 3B1.1(a); and (4) that the District Court erred in imposing restitution of $131,622.86 which was the amount that Medrala fraudulently obtained from his victims. The facts are quite detailed but they are well known to the parties hence we need not repeat them here. Rather we will set forth enough facts to elucidate our ratio decidendi. For the reasons that follow, we affirm.

Under the applicable standard of review we must consider the evidence in the light most favorable to the government, and draw all reasonable inferences from the evidence in the government's favor. *See, e.g. United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996).

I.

There is no real dispute that Medrala used false documents that represented that Esprit incurred a much higher airfare than it actually spent and that Medrala hid this scheme from his clients and others. Some 274 bills of this character were introduced. Medrala concedes that he over-billed his clients and that the mails and interstate wires were used in furtherance of this over-billing. Medrala's in-house accountants, Anne Marie Gray and Christina Feng, testified that they prepared these false Esprit bills at Medrala's instruction using false invoices, and that they sent the Esprit bills to clients along with the false travel agency invoices. Office manager Sandra Essig testified that she had obtained the false travel agency invoices from Medrala or Janice Fahey of Downingtown Travel, Esprit's travel agent. Gray, Feng, and Essig all testified that the airfare on the bill to the Client was the more expensive fare, known as a "Y-fare," and was not actually the one that Esprit incurred. A specific intent to defraud is easily inferrable from the evidence.

Medrala attempts to counter with three arguments. First, he submits he lacked intent because he told employees who questioned his use of the false invoice to over-bill his clients that the scheme was legal. This argument is patently without merit. Second, Medrala contends that the 274 travel agency invoices he submitted to his clients between 1992 and 1998 did not represent or purport to be a "receipt" or suggest that he had

3

actually incurred the amount listed in the invoice, even though he never disclosed to his clients that this receipt was false. This argument too is patently without merit. Finally, Medrala argues that his arrangements with his clients did not limit him to reimbursement of his "actual" travel expenses. But the record completely undermines this argument, for the trial record contains numerous contracts, purchase orders, and even Esprit records which provided that Esprit could be reimbursed only for its "actual" expenses. Moreover several Esprit clients testified that they permitted Esprit to be reimbursed for "actual" expenses only. Finally, Medrala argues that he had no intent to defraud because his clients would have paid the higher charge if he had actually incurred it. But this is no defense and does not negate Medrala's intent. In short there is more than enough evidence to support the conviction for mail and wire fraud.

## II.

Under § 3B1.1(a) of the sentencing guidelines,

> If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the guideline offense level] by 4 levels.

Medrala does not deny that he was an organizer or leader; rather, he submits that there were no other criminally culpable participants in the scheme and that it was not "extensive". This argument too fails.

The evidence at trial established that there were at least six criminally responsible participants in the fraud scheme (including Medrala), and that Medrala was in charge of

Esprit's finances and developed and implemented the scheme in which the others assisted. Indeed, at one meeting, in Medrala's presence, his colleague and co-owner Rebecca Winant instructed employees that they were not to tell Esprit customers that the company was using false airline receipts to bill its clients.

It is also clear that the scheme was otherwise extensive. The scheme spanned seven years, from 1992 through 1998, and involved dozens of Esprit clients all over the United States. It involved not only Medrala's own employees, who knowingly prepared hundreds of false bills, but a travel agency who supplied hundreds of false airline receipts, and many others. In *United States v. Antico*, 275 F.3d 245, 268-69 (3d Cir. 2001), a fraud that involved only three participants but used the unknowing services of many outsiders, was nonetheless considered extensive. The District Court's finding that Medrala was an organizer or leader was not clearly erroneous.

III.

We take up together Medrala's claim about the calculation of the amount of loss and the amount of restitution. Essentially, Medrala claims that his gain in the fraud scheme should be used to calculate the loss (and restitution) and that this gain is calculated by subtracting from this loss figure several Esprit expenses for which Medrala was not permitted to bill his clients, including the costs of executing the scheme. We disagree.

Medrala offers a number of items that he says should have been offset, such as per

5

diem costs for the travel of Esprit's consultants; providing coffee and snacks for the class of students; the cost of additional training supplies, overhead transparencies, and other items which were billed to Esprit by the consultants but which were not billed to the clients; shipping costs which were billable but were not in fact billed: the interest costs of carrying tickets purchased with credit cards for three or four months before the tickets were used; the costs of extra consultants for "team teaches;" and the internal costs of administration of the Esprit programs and the discount ticket programs. This claim is utterly baseless. Medrala's agreements with his clients did not permit much less compel him to deduct any such expenses, and the notion that he could claim credit for expenses incurred in defrauding the clients is well beyond the pale.

Therefore, the District Court did not err much less clearly err in calculating loss. Neither did it err in calculating restitution; Medrala makes the same argument about deducting expenses but it is equally unmeritorious in the context of restitution.

The judgment of the District Court will be affirmed.